IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JORGE RIVERA-GUADALUPE,** | : | **Civil No. 1:19-CV-1400** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF HARRISBURG BUREAU** | : | |
| **OF POLICE, JACOB PIERCE,** | : | |
| **DAUPHIN COUNTY DISTRICT** | : | |
| **ATTORNEY'S OFFICE, AND** | : | |
| **MICHAEL SPROW, ESQ.,** | : | |
| | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Before the court are two motions to dismiss under Rule 12(b)(6), one filed by Defendants City of Harrisburg Bureau of Police and Detective Jacob Pierce ("Detective Pierce") (collectively, the "Police Defendants") (Doc. 11), and another filed by Defendants Dauphin County District Attorney's Office and Michael Sprow, Esquire ("Attorney Sprow") (collectively, the "Prosecutor Defendants") (Doc. 12). For the reasons outlined below, the Police Defendants' motion shall be granted in part and denied in part, while the Prosecutor Defendants' motion shall be granted in full.

## I.   BACKGROUND

On May 21, 2017, Plaintiff Jorge Rivera-Guadalupe ("Plaintiff") was assaulted and mugged by unknown individuals. Upon telling his close friend, Christopher Valkosak ("Mr. Valkosak"), about the occurrence, Mr. Valkosak

volunteered to stay with Plaintiff at his apartment, in case the men returned to attack him again and steal more.  The next day, Mr. Valkosak was standing in the doorway to Plaintiff's apartment when some individuals began walking towards the residence down the hallway.  A scuffle ensued, resulting in one of the assailants shooting Mr. Valkosak in the abdomen before fleeing.  A man who lives down the hall from Plaintiff, Dave Chapel, witnessed the fight, and informed police that, while Plaintiff is "Puerto Rican, of short stature, and walks with a limp," the man who shot Mr. Valkosak was "a Black male, approximately 5'8" and in his early 20's."  (Doc. 1, ¶¶ 30-34.)

Detective Pierce took the lead in investigating this incident.  He discussed the matter with multiple persons, including Mr. Chapel, who described the assailant to Detective Pierce as a man who looked substantially different from Plaintiff.  As part of the investigation, Detective Pierce applied for and was granted a warrant to search Plaintiff's bedroom, turning up marijuana, a knife, identification materials, and other miscellaneous items.  As a result, Detective Pierce: (1) was unable to locate a gun in Plaintiff's apartment; (2) learned from the most knowledgeable direct witness that the shooter looked strikingly different from Plaintiff; and (3) listed, in his application for a warrant, that the shooter in question was black, while Plaintiff is not.  Despite these facts, Mr. Pierce arrested Plaintiff on May 26, 2017.

On June 5, 2017, Detective Pierce received a tip that the shooter was a man named Robert Flemming. It is unclear whether Detective Pierce conducted any follow-up investigation to ascertain the veracity of this tip. Nonetheless, Detective Pierce recommended to Assistant District Attorney Michael Sprow that Plaintiff be prosecuted for the shooting of Mr. Valkosak, supplying Attorney Sprow with the factual bases for prosecuting him. Three days later, Magisterial District Judge Sonya McKnight held a preliminary hearing to determine if probable cause existed to keep Plaintiff detained. Attorney Sprow presented witnesses at this hearing, choosing to present Mr. Valkosak, Mr. Valkosak's roommate—who was neither present at the shooting nor lived in the same building as Plaintiff—and Detective Pierce. Allegedly, Attorney Sprow knew that the evidence strongly suggested Plaintiff was innocent, and that Mr. Chapel's testimony in particular would have shown as much, but he elected to nonetheless move forward with the hearing and abstain from calling Mr. Chapel. Judge McKnight found probable cause to keep Plaintiff detained.

On August 4, 2017, the Defendants collectively[1] filed nine charges against Plaintiff: (1) attempted homicide; (2) unlawful possession of a firearm; (3) possession of an unlicensed firearm; (4) conspiracy to commit aggravated assault;

---

[1]     The parties dispute whether Plaintiff's allegation that Detective Pierce filed suit should be treated as true, given that assistant district attorneys are generally the persons that file charges, not detectives. Because the resolution of this question is irrelevant to the court's disposition of the motion, the court simply proceeds with the facts as pleaded by Plaintiff.

(5) robbery; (6) recklessly endangering another person; (7) possession of marijuana; (8) conspiracy to commit homicide; and (9) conspiracy to commit aggravated assault. (*Id.*, ¶ 48.)[2]  The Honorable Judge Richard A. Lewis of the Dauphin County Court of Common Pleas set the matter for trial on December 11, 2018. "At the outset of the trial, Defendants amended the criminal complaint to drop five (5) charges, with the four (4) remaining charges being: possession of a firearm; possession of a firearm without a license; robbery; and theft by unlawful taking." (*Id.*, ¶ 50.)  On December 12, 2018, the jury found Plaintiff not guilty on all counts.

On August 13, 2019, Plaintiff sued the Defendants, in essence alleging that they knew he was innocent but nonetheless kept him imprisoned for nineteen months while they prosecuted him.  Plaintiff included six claims in his complaint: (1) "malicious prosecution violation of 4th and 14th amendments"; (2) a 42 U.S.C. § 1983 claim for malicious prosecution in violation of the 4th and 14th amendments; (3) "*Monell*"; (4) civil conspiracy claims under both § 1983 and § 1985(2); (5) a "state common law malicious prosecution" claim; and (6) "punitive damages."[3] (*Id.*, pp. 7-15 of 15.)  On October 14, 2019, the Police Defendants and the Prosecutor Defendants filed respective motions to dismiss.  (*See* Docs. 11-12.)  Plaintiff has

---

[2]      It is unclear why Plaintiff has pleaded that he was charged twice for conspiracy to commit aggravated assault.

[3]      While Plaintiff's "Monel" and "punitive damages" claims are not truly independent causes of action, the Defendants have only moved to dismiss them on substantive grounds—as such, the court will treat them as simply attached to Plaintiff's malicious prosecution and § 1983 claims.

responded (Docs. 16-17) and Defendants have filed reply briefs (Docs. 20-21).  In their reply brief, the Prosecutor Defendants raised the issue of state common law immunity for the first time, and neither Plaintiff nor the City Defendants had ever briefed the matter.  The court therefore ordered the parties to submit briefs on the issues of immunity under Pennsylvania law.  (Doc. 22).  The parties thereafter submitted the ordered briefing.  (*See* Docs. 24-26.)  This matter is thus fully briefed and ripe for review.[4]

## II.   <u>STANDARD OF REVIEW</u>

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, 783 F. App'x 159, 162 (3d Cir. 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96-97 (3d Cir. 2018)).  The facts alleged must be "construed in the light most favorable to the plaintiff." *In*

---

[4]   Plaintiff also filed a motion to strike the City Defendants' briefing on this matter.  Because the court will already be denying the City Defendants' motion to dismiss on the basis of Pennsylvania immunity, Plaintiff has no need to further brief the matter or have the City Defendants' briefing struck.  The court will thus deny that motion.

*re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted). The universe of facts upon which the court may rely includes those facts alleged in the complaint, facts which the court may take judicial notice of, and indisputably authentic documents referred to in the plaintiff's complaint. *Hartig Drug Co., Inc. v. Senju Pharm Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id*. at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id*. Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. In assessing the level of factual details required under *Twombly*, the Third Circuit has held:

> The Supreme Court reaffirmed that Fed. R. Civ. P. 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests, and that this standard does not require detailed factual allegations.

6

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations and quotations omitted).

## III.   DISCUSSION

### A.   The Court Will Not Consider Facts Outside of the Complaint.

The court takes note of three groups of facts the parties refer to that are not properly before the court today.  First, Plaintiff introduces new facts in his brief—such as alleging that Mr. Sprow helped conduct the investigation of this case before Plaintiff was arrested—that are not properly pleaded.  These facts can only be added by formal amendment of the complaint.  *Cmwlth. Of Pa. ex rel. Zimmerman v. PepsiCo., Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (internal quotations and brackets omitted).  Second, Plaintiff introduces a new document in his opposition briefing.  This too is not part of the record because the facts within it were not alleged within the complaint nor was the document attached to the complaint.  Even if it was part of the record, the court will not consider it because Plaintiff has made no effort to authenticate it.  *See Pension Ban. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993) ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").

Third, the Police Defendants introduce, as an attachment to their reply brief, what they claim is the complete version of the document attached to Plaintiff's opposition brief.  Insofar as the Police Defendants believe this is a document that can properly be considered on 12(b)(6), they should have introduced it in their opening brief, pointed to the portions of the complaint that rely upon this document, and authenticated it.  *Id.*  Alternatively, they should have simply argued that it was improperly before the court.  Their failure to do so means the court will not consider it.  Fourth, the Police Defendants also attempt to constantly reference a hodgepodge of outside records, while simultaneously characterizing all of the facts in a manner most favorable to them.  The Police Defendants also fail to explain why many of these facts are relevant to the court at all—it appears, instead, they are simply trying to paint Plaintiff in a negative light to compel the court to rule against him.  Thus, at this time, the court will confine its analysis to the facts alleged in Plaintiff's complaint and all reasonable inferences that can be made from them.  *Estate of Ginzburg by Ermey*, 783 F. App'x at 162.

B. Neither the Fourth Nor Fourteenth Amendment Give Rise to Independent Causes of Action.

Plaintiff's first count alleges a cause of action arising solely from the Fourth and Fourteenth Amendments.  The Police Defendants argue this claim must be dismissed because there is no independent cause of action arising from an Amendment—instead, such claims must be brought under Section 1983.  *See Baker*

*v. McCollan*, 443 U.S. 137, 144 n.3 (1979).   Plaintiff does not respond to this argument in his opposing brief.   The court therefore will dismiss Count 1 with prejudice.

C. Plaintiff's Federal Claims Against Defendant Sprow, As Pleaded, Are Barred by Absolute Immunity.

The Prosecutor Defendants move to dismiss Plaintiff's federal claims based on absolute immunity and qualified immunity.   Absolute and qualified immunity are affirmative defenses.   Therefore, the court can only grant a 12(b)(6) motion to dismiss based on immunity if the defenses "clearly appear on the face of the complaint."   *Wilson v. Rackmill*, 878 F.2d 772, 776 (3d Cir. 1989); *accord Thomas v. Independence Twp.*, 463 F.3d 285, 291 (3d Cir. 2006).

"[A] prosecutor enjoys absolute immunity from § 1983 suits for damages when he acts within the scope of his prosecutorial duties." *Imbler v. Pachtman*, 424 U.S. 409, 420 (1976).   In determining whether a prosecutor is entitled to absolute immunity, courts apply "a functional approach which looks to the nature of the function performed, not the identity of the actor who performed it." *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (internal quotations and citations omitted). The key question is whether the prosecutor was performing "the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial," or if they were performing the type of conduct more closely aligned with the ordinary work performed by police, conducting investigatory or administrative work "before he has

probable cause to have anyone arrested." *Id.* 273-74; *accord Imbler*, 424 U.S. at 430 ("[A] prosecutor engaged in certain investigative activity enjoys, not the absolute immunity associated with the judicial process, but only a good-faith defense comparable to the policeman's."). When prosecutors engage in activity falling outside of the scope of their usual duties, they do not acquire retroactive immunity once they begin their prosecutorial duties. *See, e.g., Buckley*, 509 U.S. at 275-76 ("That the prosecutors later called a grand jury to consider the evidence this work produced does not retroactively transform this work from the administrative into the prosecutorial.").

For example, the Supreme Court has held that a prosecutor was absolutely immune from liability for statements made and evidence presented during a probable cause hearing, but the prosecutor was not absolutely immune for having given "legal advice to the police on the propriety of hypnotizing a suspect and on whether probable cause existed to arrest that suspect." *Id.* at 270-71 (discussing *Burns v. Reed*, 500 U.S. 478 (1991)). Thus, "absolute immunity does not apply when a prosecutor gives advice to police during a criminal investigation, when the prosecutor makes statements to the press, or when a prosecutor acts as a complaining witness in support of a warrant application." *Van de Kamp v. Goldstein*, 555 U.S. 335, 343 (2009).

In *Buckley*, the plaintiff sued prosecutors "for allegedly fabricating evidence during the preliminary investigation of the crime and making false statements at a press conference." 509 U.S. at 261. Notably, he alleged that the "police officers and assistant prosecutors were performing essentially the same investigatory functions" before the plaintiff was prosecuted. *Id.* at 262-63. These allegations against the prosecutors were sufficient to survive a motion to dismiss for absolute immunity. *See id.*

Here, Plaintiff's allegations against Attorney Sprow concern conduct he engaged in while executing traditional prosecutorial duties. A careful review of Plaintiff's complaint reveals accusations that Attorney Sprow acted improperly when he: selected which witnesses to call during the preliminary hearing (Doc. 1, ¶ 44); filed charges against Plaintiff (*id.*, ¶ 48); supervised trial attorneys in the DA's office (*id.*, ¶ 76); knowingly ignored exculpatory evidence in deciding to bring charges against and ultimately prosecute Plaintiff (*id.*, ¶¶ 88, 102); agreed with police in filing charges (*id.*, ¶ 107); and relied on "unfounded allegations" in deciding "to prosecute Plaintiff" (*id.*, ¶ 109). All of these acts constitute typical conduct by a prosecutor protected by the absolute immunity doctrine.

Plaintiff gets a little closer to escaping immunity in paragraphs 110-111 of the complaint, where he alleges that "Sprow necessarily worked in conjunction with Defendants Police Bureau and Pierce." (*Id.*, ¶¶ 110-111.) He then goes on to allege

that the "faulty investigation" at issue was "conducted by Defendants Police Bureau and Pierce," but he does not allege that Attorney Sprow actually participated in the pre-arrest investigation himself.  (*Id.*)  The problem with these allegations is that they do not include any explanation as to how Attorney Sprow worked with the Police Bureau and Detective Pierce, nor do they accuse Attorney Sprow of actually participated in pre-arrest investigation himself.  Thus, while Plaintiff gets close to pleading facts that may escape absolute immunity, he has not provided sufficient factual details or clarity to render those parts of his allegations plausible under *Twombly*.

The court will therefore dismiss all of Plaintiff's allegations against Attorney Sprow, outside of paragraphs 110-111, with prejudice.  The court will dismiss the allegations in paragraphs 110-111, however, without prejudice, granting Plaintiff leave to replead his claims against Attorney Sprow.  Because the court is dismissing these claims under the absolute immunity doctrine, it will not address qualified immunity at this time.

D. Plaintiff Has Properly Stated a Claim For Malicious Prosecution Against Detective Pierce Under Both State and Federal Law.

The City Defendants seek dismissal of Plaintiff's malicious prosecution claims, brought under 42 U.S.C. § 1983 and under Pennsylvania common law.  To state a claim for malicious prosecution under § 1983, a plaintiff must allege that:

> (1) the defendant initiated a criminal proceeding; (2) the
> criminal proceeding ended in his favor; (3) the defendant
> initiated the proceeding without probable cause; (4) the
> defendant acted maliciously or for a purpose other than
> bringing the plaintiff to justice; and (5) the plaintiff
> suffered deprivation of liberty consistent with the concept
> of seizure as a consequence of a legal proceeding.

*Johnson v. Knorr*, 477 F.3d 75, 81-82 (3d Cir. 2007).  A Pennsylvania common law

malicious prosecution claim "relating to a criminal prosecution" requires a showing

"that the defendant (1) instituted proceedings against the plaintiff, (2) without

probable cause, (3) with malice, and (4) that the proceedings were terminated in

favor of the plaintiff."  *Corrigan v. Central Tax Bureau of Pa., Inc.*, 828 A.2d 502,

505 (Pa. Cmwlth. 2003).[5]

First, Detective Pierce argues that, as a matter of law, he cannot be held liable

for malicious prosecution because detectives do not initiate lawsuits.  As the Third

Circuit has explained:

> It is settled law that officers who conceal and
> misrepresent material facts to the district attorney are not
> insulated from a § 1983 claim for malicious prosecution

---

[5]     The Pennsylvania Supreme Court has held that the "common law tort of malicious
prosecution has been codified and modified as a statutory cause of action."  *Matter of Larsen*, 616
A.2d 529, 587 (Pa. 1992), *abrogated on other grounds*, *In re Angeles Roca First Judicial Dist.
Phila. Cty.*, 173 A.3d 1176, 1184 (Pa. 2017).  The statute in question, however, only appears to
govern the malicious prosecution of "civil proceedings."  *See* 42 Pa.C.S.A. § 8351(a).  Because it
does not directly address common law malicious prosecution "relating to a criminal prosecution,"
*Corrigan*, 828 A.2d at 505, it does not alter the common law rules outlined in *Corrigan*.  *See In re
Rodriguez*, 900 A.2d 341, 344-45 (Pa. 2003) ("In order to abrogate a common-law principle, the
statute must 'speak directly' to the question addressed by common law.") (quoting *United States
v. Texas*, 507 U.S. 529, 534 (1993)).

> simply because the prosecutor, grand jury, trial court, and
> appellate court all act independently to facilitate erroneous
> convictions.  If the officers influenced or participated in
> the decision to institute criminal proceedings, they can be
> liable for malicious prosecution.

*Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014) (internal citations and quotations

omitted).   Similarly, under Pennsylvania law, "an individual may be liable for

malicious prosecution if he 'initiates or **procures the institution** of criminal

proceedings without probable cause.'" *Chen v. Chen*, No. 1203-MDA-2019, 2020

WL 2850265, at *3 n.3 (Pa. Super Ct. June 1, 2020) (emphasis in *Chen*) (rejecting

the appellants' argument that "they are entitled to JNOV as a matter of law because

they did not initiate proceedings against Appellee") (quoting *Bradley v. Gen. Acc.

Ins. Co.*, 778 A.2d 707, 710 (Pa. Super. 2001)).   Here, Plaintiff has alleged that

Detective Pierce contributed to the initiation of the criminal case against him by

advising the district attorney's office to bring charges based on insufficient facts.

This satisfies the "initiation" element of malicious prosecution under both federal

and Pennsylvania law.

Second, Detective Pierce argues that Plaintiff has not adequately alleged that

Detective Pierce acted maliciously or without probable cause.  The court disagrees.

According to the complaint, Detective Pierce was the lead detective investigating

this incident, and he intentionally disregarded evidence exculpating Plaintiff to

encourage the district attorney's office to pursue charges against Plaintiff.

According to the complaint, Detective Pierce had no substantial evidence that Plaintiff had committed the shooting. He also disregarded compelling exculpatory evidence suggesting a man who did not even closely resemble Plaintiff committed the shooting. Yet, he nonetheless recommended the district attorney's office prosecute Plaintiff for it. Also, it is undisputed that Plaintiff has adequately pleaded that the criminal case terminated in his favor and that he suffered cognizable injuries. Thus, Plaintiff has properly alleged all the elements for malicious prosecution under both § 1983 and Pennsylvania common law.

Finally, Detective Pierce seeks dismissal of Plaintiff's allegation of a violation of the Fourteenth Amendment. The Supreme Court has held that there is no substantive due process violation under the Fourteenth Amendment when a party is arrested without probable cause. *Albright v. Oliver*, 510 U.S. 266, 274-75 (1994). The Court did, however, hold that the Fourth Amendment was the appropriate basis for asserting such a constitutional violation, and that the Fourteenth Amendment is the legal mechanism by which states are responsible for complying with the Fourth Amendment. *See id.* at 272-73; *see also McCloud v. Benfield*, No. 2:09-CV-569, 2010 WL 582088, at *4 (M.D. Ala. Feb. 17, 2010) ("[T]he Fourth Amendment applies to states and state officers only through the Fourteenth Amendment under the doctrine of incorporation.").

Here, it is not clear from the complaint whether Plaintiff is alleging a separate violation of the Fourteenth Amendment independent from the Fourth Amendment. Indeed, Plaintiff concedes that there is no independent Fourteenth Amendment violation.  (Doc. 17, p. 11 of 18 ("It's true that Plaintiff's malicious prosecution claim may not rest upon the 14th Amendment.").)  Nonetheless, Defendants are state actors, rendering the Fourteenth Amendment necessary for the Fourth Amendment to apply to them.  As a result, the court will grant the motion to the extent any substantive Fourteenth Amendment claim could be read from the Complaint, but it will not generally strike Plaintiff's references to the Fourteenth Amendment.  *See McCloud*, 2010 WL 582088 at *4.[6]

E. Plaintiff's *Monell* Claims Fail Because the Named Government Defendants Are Not "Persons."

Here, Plaintiff sued the City of Harrisburg Police Bureau and the Dauphin County District Attorney's Office for "*Monell*" liability.  Neither can be properly named as a defendant, however, because they are not independent persons—they are arms of the municipality from which they derive their authority.  *See Briggs v. Moore*, 251 F. App'x 77, 79 (3d Cir. 2007) (holding that a district attorney's office

---

[6]     The City Defendants here improperly cite unpublished opinions and fail to attach these opinions to their brief.  This both constitutes a violation of the local rules and made it difficult for the court to track down the cases the City Defendants were trying to cite.  Local Rule 7.8(a) ("A copy of any unpublished opinion which is cited must accompany the brief as an attachment.").  If the City Defendants cite future unpublished opinions improperly and fail to attach them to their brief, the court may strike those portions of the brief.

cannot have a claim brought against it) (citing *Reitz v. Cnty. Of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997)); *Martin v. Red Lion Police Dep't*, 146 F. App'x 558, 562 n.3 (3d Cir. 2005); *Johnson v. City of Erie, Pa.*, 834 F. Supp. 873, 878-79 (W.D. Pa. 1993) ("The City of Erie Police Department is a sub-unit of the city government and, as such, is merely a vehicle through which the city fulfills its police functions."); *Terrell v. City of Harrisburg Police Dep't*, 549 F. Supp. 2d 671, 686 (M.D. Pa. 2008) (holding that the City of Harrisburg Police Department is a sub-unit of government). Thus, Plaintiff's true claims are against the City of Harrisburg and Dauphin County. Because neither of them has been named as a defendant in Plaintiff's complaint, and because amendment at this stage of the lawsuit would easily cure that problem, the court will dismiss Plaintiff's *Monell* claims without prejudice. The Police Bureau and District Attorney's Office, however, will be dismissed from the case with prejudice, because no amendment could fix the legal problem with Plaintiff's allegations against them. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002).

F. Attorney Sprow Is Immune From Plaintiff's State-Law Malicious Prosecution Claim, but Detective Pierce Is Not.

Plaintiff has pleaded a common law malicious prosecution claim under Pennsylvania law against all of the Defendants. The Defendants have raised different types of state-based immunity defenses against the state-law malicious prosecution claims. The court will address each in turn.

The Prosecutor Defendants have moved to dismiss Plaintiff's state law claims on the basis of Pennsylvania's common law immunity for "high public officials." *Durham v. McElynn*, 772 A.2d 68, 69 (Pa. 2001).   Under that doctrine, "high public officials are immune from suits seeking damages for actions taken or statements made in the course of their official duties." *Id.*  Here, "Plaintiff concedes that Defendant Sprow is protected from any state claims based on Pennsylvania's common law immunity." (*See* Doc. 24, p. 3.)  Thus, the court will dismiss, with prejudice, Plaintiff's state-law malicious prosecution claims against the Prosecutor Defendants.

Detective Pierce argues that 42 Pa.S.C.A. § 8546 makes him immune to Plaintiff's state-law malicious prosecution claims.   Under § 8546, "any action brought against an employee of a local agency for damages on account of an injury to a person or property based upon claims arising from, or reasonably related to, the office or the performance of the duties of the employee" are precluded by official immunity. *Challenger v. Boyer*, No. 1551-MDA-2013, 2014 WL 10803038, at *5 (Pa. Super. Ct. Aug. 20, 2014) (quoting 42 Pa.S.C.A. § 8546).  In contrast to high public official immunity, however, immunity under § 8546 "does not apply to willful misconduct on the part of the government employee." *Id.*  Here, Plaintiff has pleaded that Detective Pierce intentionally pursued a corrupt investigation and recommended

that Plaintiff be prosecuted despite knowing that he was not culpable.[7]  This renders

official immunity under § 8546 inapplicable to Plaintiff's state-law malicious

prosecution claim.  *See id.* (holding district court erred in dismissing properly-

pleaded malicious prosecution claim against a police officer) (citing Pa.C.S.A. §

8550); *Weimer v. Cnty. Of Fayette, Pa.*, No. 17-cv-1265, 2018 WL 4404055, at *10

(W.D. Pa. Sept. 14, 2018).[8]

G. Plaintiff Has Failed to State a Claim for Conspiracy.[9]

"To prevail on a conspiracy claim under § 1983, a plaintiff must prove that

persons acting under color of state law 'reached an understanding' to deprive him of

his constitutional rights." *Jutrowski v. Twp. Of Riverdale*, 904 F.3d 280, 293-94 (3d

Cir. 2018) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150-52 (1970)).  This

specifically requires the plaintiff to show "that the object of the conspiracy was the

deprivation of a federally protected right."  *Id.* at 295.  Here, Plaintiff has pleaded

several facts showing that the City Defendants and the Prosecutor Defendants

worked together to prosecute Plaintiff, but the complaint lacks any plausible

---

[7]     The City Defendants' attempts to introduce new evidence, reference past arrests of Plaintiff, and egregiously mischaracterize Plaintiff's allegations do not change the facts as alleged.

[8]     The City Defendants also assert, in a footnote, that 42 Pa.C.S.A. § 8542(a)(2) bars an intentional tort claim against the City.  Because the court is already dismissing Plaintiff's *Monell* claims against the police department, and because Plaintiff has not officially named the City as a defendant, yet, the court will not decide this issue at this time.

[9]     Plaintiff originally pleaded a conspiracy claim under § 1985(2) but, in his opposition briefing, he "acknowledge[d] that his conspiracy claim under § 1985(2) is deficient." (Doc. 16, p. 8.)  As such, the court will dismiss that part of his conspiracy claim with prejudice.

allegation that they agreed specifically to deny Plaintiff his rights.  The fact that the police and prosecutor agreed to prosecute a man is insufficient to show a conspiracy between the two to violate his constitutional rights, even if the officer in question bore such an intent.  In fact, from the facts as pleaded, the most plausible scenario is that Attorney Sprow reasonably relied upon poor facts supplied to him by Detective Pierce.  Thus, the court will dismiss Plaintiff's conspiracy claim without prejudice.

H. <u>Plaintiff Can Only Bring Punitive Damages Claims Under § 1983 Against Defendants In Their Individual Capacity.</u>

Plaintiff has alleged punitive damages as a remedy for all of his claims against the Defendants.  (*See* Doc. 1, pp. 14-15.)  The City Defendants moved to dismiss the punitive damages claims generally, except as asserted against Detective Pierce in his individual capacity.  The court agrees that a § 1983 claim does not permit punitive damages to be collected from a municipal defendant.  *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 259 (1981).  Thus, the court will dismiss, with prejudice, all claims for punitive damages against any municipal defendants that Plaintiff may add to his complaint if it is amended.  The City Defendants, however, do not explain why, or cite any authority stating that, a party is barred from bringing punitive damages claims against a municipality under Pennsylvania law.  Thus, the court will not dismiss Plaintiff's state law punitive damages claims.

## IV.   **CONCLUSION**.

For the reasons outlined above, the court will grant the City Defendants' motion in part, deny it in part, and grant the Prosecutor Defendants' motion in full. The court will also grant Plaintiff twenty-one days leave to amend the complaint. An appropriate order shall follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: July 22, 2020