IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JORGE RIVERA-GUADALUPE,** | : | **Civil No. 1:19-CV-1400** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JACOB PIERCE, et al.** | : | |
| | : | |
| **Defendants.** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Before the court are two motions to dismiss under Rule 12(b)(6), one filed by Defendants City of Harrisburg and Detective Jacob Pierce ("Defendant Pierce") (Doc. 38), and another filed by Defendants Dauphin County and Michael Sprow, Esquire ("Defendant Sprow") (Doc. 43).  For the reasons outlined below, the Police Defendants' motion shall be denied, the Prosecutor Defendants' motion shall be granted with prejudice, and Plaintiff shall be instructed to clarify a portion of his complaint.

## I.    **BACKGROUND**

On May 21, 2017, Plaintiff Jorge Rivera-Guadalupe ("Plaintiff") was assaulted and mugged by unknown individuals.  Upon telling his close friend, Christopher Valkosak ("Mr. Valkosak"), about the occurrence, Mr. Valkosak volunteered to stay with Plaintiff at his apartment in case the men returned.  The next day, Mr. Valkosak was standing in the doorway to Plaintiff's apartment when some

individuals began walking towards the residence down the hallway.   A scuffle ensued, resulting in one of the assailants shooting Mr. Valkosak in the abdomen before fleeing.   A man who lives down the hall from Plaintiff, Dave Chapel, witnessed the fight and informed police that, while Plaintiff is "Puerto Rican, of short stature, and walks with a limp," the man who shot Mr. Valkosak was "a Black male, approximately 5'8" and in his early 20's."  (Doc. 36, ¶¶ 30-34.)

Detective Pierce with the Harrisburg Police Department took the lead in investigating this incident.   He interviewed several people including Mr. Chapel, who described the assailant to Detective Pierce as a man who looked substantially different from Plaintiff.   As part of the investigation, Detective Pierce applied for and was granted a warrant to search Plaintiff's bedroom, turning up marijuana, a knife, identification materials, and other miscellaneous items.  As a result, Detective Pierce: (1) was unable to locate a gun in Plaintiff's apartment; (2) learned from the most knowledgeable direct witness that the shooter looked strikingly different from Plaintiff; and (3) listed, in his application for a warrant, that the shooter in question was black, while Plaintiff is not.  Despite these facts, Mr. Pierce arrested Plaintiff on May 26, 2017.

On June 5, 2017, Detective Pierce received a tip that the shooter was a man named Robert Flemming.   It is unclear whether Detective Pierce conducted any follow-up investigation to ascertain the veracity of this tip.  Nonetheless, Detective

Pierce recommended to Assistant District Attorney Michael Sprow that Plaintiff be prosecuted for the shooting of Mr. Valkosak, supplying Attorney Sprow with the factual bases for prosecuting him.  Three days later, Magisterial District Judge Sonya McKnight held a preliminary hearing to determine if probable cause existed to keep Plaintiff detained.  Attorney Sprow presented witnesses at this hearing, choosing to present Mr. Valkosak, Mr. Valkosak's roommate—who was neither present at the shooting nor lived in the same building as Plaintiff—and Detective Pierce. Allegedly, Attorney Sprow knew that the evidence strongly suggested Plaintiff was innocent, and that Mr. Chapel's testimony in particular would have shown as much, but he elected to nonetheless move forward with the charges and abstain from calling Mr. Chapel.  Judge McKnight found probable cause to keep Plaintiff detained.

On August 4, 2017, Defendants collectively filed nine charges against Plaintiff: (1) attempted homicide; (2) unlawful possession of a firearm; (3) possession of an unlicensed firearm; (4) conspiracy to commit aggravated assault; (5) robbery; (6) recklessly endangering another person; (7) possession of marijuana; (8) conspiracy to commit homicide; and (9) conspiracy to commit aggravated assault.  (*Id.*, ¶ 48.)  Judge Richard A. Lewis of the Dauphin County Court of Common Pleas set the matter for trial on December 11, 2018.  "At the outset of the trial, Defendants amended the criminal complaint to drop five (5) charges, with the four (4) remaining charges being: possession of a firearm; possession of a firearm

without a license; robbery; and theft by unlawful taking." (*Id.*, ¶ 50.)  On December 12, 2018, the jury found Plaintiff not guilty on all counts.

On August 13, 2019, Plaintiff sued the Defendants, in essence alleging that they knew he was innocent but nonetheless kept him imprisoned for nineteen months while they prosecuted him.  Plaintiff included six claims in his complaint: (1) "malicious prosecution violation of 4th and 14th amendments"; (2) a 42 U.S.C. § 1983 claim for malicious prosecution in violation of the 4th and 14th amendments; (3) "*Monell*"; (4) civil conspiracy claims under both § 1983 and § 1985(2); (5) a "state common law malicious prosecution" claim; and (6) "punitive damages." (*Id.*, pp. 7-15 of 15.)  On October 14, 2019, the Police Defendants and the Prosecutor Defendants filed respective motions to dismiss.  (*See* Docs. 11-12.)  Plaintiff responded (Docs. 16-17) and Defendants filed reply briefs (Docs. 20-21).  In their reply brief, the Prosecutor Defendants raised the issue of state common law immunity for the first time, and neither Plaintiff nor the City Defendants had ever briefed the matter.  The court therefore ordered the parties to submit briefs on the issues of immunity under Pennsylvania law.  (Doc. 22).  The parties thereafter submitted the ordered briefing.  (*See* Docs. 24-26.)  The court thus granted and denied the motions in part.  (*See* Docs. 30-31.)

On August 3, 2020, Plaintiff amended his complaint, adding new facts and complexity to his allegation that Defendant Pierce had complete knowledge of

Plaintiff's innocence yet nonetheless insisted Defendant Sprow prosecute him.  (*See, generally, id.*)  His amended complaint contained the following causes of action: (1) "Violation of 42 U.S.C. § 1983 Malicious Prosecution/4th and 14th Amendment Violations"; (2) "Monell"; (3) "Violation State Common Law Malicious Prosecution;" and (4) "Punitive Damages." (*Id.*, ¶¶ 53-117.)  Defendants filed new motions to dismiss (Docs. 38-39, 43-44), Plaintiff responded to both (Docs. 50 & 52), and Defendants filed reply briefs (Docs. 51 & 55).  The motions are thus ripe for review.

## II.   **STANDARD OF REVIEW**

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, 783 F. App'x 159, 162 (3d Cir. 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96-97 (3d Cir. 2018)).  The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted).  The universe of facts upon which the

court may rely includes those facts alleged in the complaint, facts which the court may take judicial notice of, and indisputably authentic documents referred to in the plaintiff's complaint. *Hartig Drug Co., Inc. v. Senju Pharm Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard. *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id*. at 365. Second, the court must "peel away those allegations that are no more than conclusions and thus not entitled to the assumption of truth." *Id*. Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id*. (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. In assessing the level of factual details required under *Twombly*, the Third Circuit has held:

> The Supreme Court reaffirmed that Fed. R. Civ. P. 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests, and that this standard does not require detailed factual allegations.

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations and quotations omitted).

## III.  **DISCUSSION**

### a.  <u>Plaintiff Has Withdrawn His *Monell* Claims, Leaving Only Individual Capacity Claims Against Defendants Sprow and Pierce.</u>

Here, Plaintiff has stated in his briefing that he shall be withdrawing both of his *Monell* claims against the County and the City.  Plaintiff has not indicated that he has any intention of re-filing these claims.  The court will thus dismiss both with prejudice.  Because "a judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents," the court will also dismiss the claims against Defendant Sprow and Pierce in their official capacities.  *Brandon v. Holt*, 469 U.S. 464, 471-72 (1985).

### b.  <u>Plaintiff Has Failed to State a Claim Against Defendant Sprow</u>.

In its previous memorandum, the court explained that Defendant Sprow was protected by absolute immunity from any claims stemming solely from his quasi-judicial decision-making as a prosecutor.  The court nonetheless noted that, under the current state of the law, a prosecutor can be liable for engaging in malicious pre-prosecutorial investigative conduct, and Plaintiff came close to alleging Defendant Sprow had tortiously involved himself in the investigation of Plaintiff's alleged criminal activity.  The court thus granted Plaintiff leave to amend his complaint and potentially state such a claim against Defendant Sprow.

In response, Plaintiff appears to have made two relevant additions to his complaint.  First, Plaintiff has buffed up his allegations against Defendant Sprow by

alleging he had actual knowledge of Defendant Pierce's alleged poor investigation. Because these allegations of knowledge are conclusory, they are insufficient to survive a 12(b)(6).  Second, Plaintiff has added a new paragraph into his complaint accusing an unidentified person from the District Attorney's office of contacting Defendant Pierce and instructing him to question Mr. Rivera-Guadalupe, suggesting Defendant Sprow participated in the pre-arraignment investigation.  In his briefing, however, Plaintiff admits that this is not enough on its own to raise a reasonably plausible claim against Defendant Sprow and therefore requests discovery to bolster the specificity of his claims.  Because the general rule under *Ashcroft* and *Twombly* is that the complaint itself must contain plausible allegations, the court cannot grant discovery merely to allow Plaintiff to reach that point post-discovery.  As such, the court will grant Defendant Sprow's motion to dismiss any allegations against him in his individual capacity.

This ruling will also result in a complete dismissal of Defendant Sprow with prejudice.  Plaintiff makes clear in his briefing that an additional opportunity to amend would not yield any new facts.  Thus, an additional order granting leave to amend would be futile, justifying the dismissal of Plaintiff's claims against Defendant Sprow with prejudice.

c. <u>The Court Will Deny Defendant Pierce's Motion Under the Consolidation Rule, but Will Nonetheless Address the Substance of the Parties' Disputes to Streamline the Progress of this Case.</u>

Under Rule 12(g)(2), "a party that makes a motion under [Rule 12] must not make another motion under this rule raising a defense or objection that was available to the party but omitted from its earlier motion." "This consolidation rule is intended to eliminate unnecessary delay at the pleading stage by encouraging the presentation of an omnibus pre-answer motion in which the defendant advances every available Rule 12 defense simultaneously rather than interposing these defenses and objections in piecemeal fashion." *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015). "The procedural bar of Rule 12(g)(2) [] covers all motions to dismiss for failure to state a claim, regardless of the grounds asserted." *Id.* at 321.

Here, Defendant Pierce already challenged whether the original complaint alleged sufficient facts to state claims against him, and the court already rejected those arguments. Defendant Pierce's brief in support of his motion to dismiss the amended complaint violates the consolidation rule by rehashing those arguments and by making new arguments, such as on the defense of qualified immunity, that could have been raised in his original brief. The court will therefore deny Defendant Pierce's motion to dismiss on procedural grounds.

Nonetheless, for the sake of streamlining the process of this lawsuit, the court will address the substance of the significant legal dispute between the parties—

whether, as a matter of law, an investigator violates a clearly-established constitutional right when he has probable cause to arrest a man for one crime yet nonetheless recommends multiple groundless charges be brought against him. Having reviewed the Third Circuit law on the matter, the court finds it clearly established that government officials may not bring charges against an individual lacking probable cause simply because they had probable cause to charge him with one crime.

In *Wright v. City of Philadelphia*, a woman was sexually assaulted by two men in one of the men's sister's house. 409 F.3d 595, 596-597 (3d Cir. 2005). After assaulting her, the assailants kicked the woman out of the house while retaining many of her items, including clothing. *Id.* The woman knocked on various doors seeking help. *Id.* When she was unable to receive any, she broke back into the house to acquire her clothes, and, while inside, took many items not belonging to her. *Id.* While she later claimed that she grabbed extra items solely for the sake of identifying her assailants, she did appear to grab somewhat valuable and generic objects that served no such purpose. *Id.* at 602.

Following this event, the owner of the house filed a burglary report with the police, while the victim filed a sexual assault report with them. *Id.* at 597-98. This resulted in two different officers investigating the incident in question. *Id.* At the conclusion of the two officers' investigation, they concluded that the woman had

actually just robbed the house and not been assaulted.  *Id.*  She was thus charged with burglary, theft, and criminal trespass.  *Id.* The assailants were not charged with sexual assault.  Two months later, however, all charges against the victim were dropped at her preliminary hearing.  *Id.*  As such, neither the plaintiff's harms nor the defendants' conduct at issue in *Wright* extended beyond the plaintiff's pre-arraignment arrest.

Later, a women's advocacy group compelled the police to re-open several sexual assault cases, accusing them of failing to competently review the evidence. *Id.*  In response, the police re-examined the *Wright* victim's case, locating DNA evidence from her rape kit proving that her story was true.  *Id.*  When the police presented this evidence to the assailants, they pleaded guilty to sexual assault and were imprisoned.  *Id.*

The victim then sued the two investigating officers for false arrest and malicious prosecution, arguing that they should have concluded she had a valid intent for breaking into the home (i.e. the collection of her things and evidence of assailants' identity), thus negating scienter necessary for any of her crimes.  *Id.*  The parties cross-moved for summary judgment, and the district court denied the motions.  *Id.* at 598-99.  On appeal, the Third Circuit reversed, concluding that the appellee appeared to confess to several elements of her crimes by admitting that she broke into a house and took items that had little evidentiary value, hence giving the

police probable cause to arrest her for at least one charge. *Id.* at 603. The court noted that, while burglary requires entry into a house with the intent to commit an additional crime, criminal trespass only requires the intent to enter another's property with knowledge that one lacks permission to do so. *Id.* at 602-03. Thus, the *Wright* Plaintiff's admissions to the police were sufficient to give rise to probable cause that she did in fact engage in at least one crime, creating a reasonable basis for her arrest. *Id.* Following this analysis, the court also quickly dismissed the *Wright* plaintiff's malicious prosecution claims without conducting a charge-by-charge analysis. *See id.* at 604. It did not, however, go so far as to establish any general rule of law. *See id.* at 604.

Two years later, the Third Circuit more thoroughly analyzed the specific question of whether, as a matter of law, a malicious prosecution claim must be dismissed if there was probable cause for one charge against the plaintiff. *See Johnson v. Knorr*, 477 F.3d 75 (3d Cir. 2007). In contrast to *Wright*, the "principle issue" in *Johnson* was "whether the finding that the agents had probably cause to arrest Johnson on [one charge] without findings that they also had probable cause for his arrest on other charges made against him defeats Johnson's cause of action for malicious prosecution on the remaining charges." *Id.* at 78.

To begin its analysis, the *Johnson* court emphasized that "[m]alicious prosecution differs from false arrest inasmuch as a claim for false arrest, unlike a

claim for malicious prosecution, covers damages only for the time of detention until the issuance of process or arraignment, and not more." *Id.* at 82 (internal quotations and brackets omitted); *see also Montgomery v. De Simone*, 159 F.3d 120, 126 (3d Cir. 1998) (citing *Heck v. Humphrey*, 512 U.S. 477, 484 (1994)). The *Johnson* court acknowledged that *Wright* did not involve a charge-by-charge analysis of the plaintiff's malicious prosecution claims, but *Johnson* nonetheless emphasized that "we do not understand *Wright* to establish legal precedent of such broad application that it would 'insulate' law enforcement officers from liability for malicious prosecution in all cases in which they had probable cause for the arrest of the plaintiff on any one charge." *Id.* at 83. Instead, the *Johnson* court emphasized that *Wright* truly turned on the fact that "the officers took their actions by the time of the arrest and thus *before* the prosecution." *Id.* at 82 n. 9 (emphasis added); *see also id.* at 84.

The *Johnson* court further distinguished *Wright* by pointing out that those officers relied primarily on the victim's admission of several facts that constituted elements of the crimes she was arrested for. In contrast to relying upon clear admissions by the plaintiff, the officers in *Johnson* were accused of "intentionally misrepresent[ing]" the plaintiff's conduct. *Id.* at 84; *see also see also Reedy v. Evanson*, 615 F.3d 197, 223 n. 35 (3d Cir. 2010) (distinguishing *Wright*, holding it only applies to probable cause analysis where the plaintiff "admitted to having committed elements of the crime charged"). Moreover, "unlike the conduct of the

defendants in *Wright*, Knorr's involvement in both the arrest and initiation of criminal proceedings against *Johnson* was more extensive and lasted beyond the issuing of an affidavit of probable cause for his arrest." *Johnson*, 477 F.3d at 84. Hence—due to the conduct of the defendants and the injuries suffered by the plaintiff all ending before the plaintiff was arraigned and prosecuted—the *Wright* plaintiff's claims all boiled down in substance to false arrest claims, not genuine malicious prosecution claims. *See Wright*, 409 F.3d at 598; *Johnson*, 477 F.3d at 82; *De Simone*, 159 F.3d at 126; *Heck*, 512 U.S. at 484; *see also Jarbough v. Att'y Gen. of U.S.*, 483 F.3d 184, 189 (3d Cir. 2007) ("We are not bound by the label attached by a party to characterize a claim and will look beyond the label to analyze the substance of a claim. To do otherwise would elevate form over substance and would put a premium on artful labeling.").

The *Johnson* court went further to state that this manner of distinguishing *Wright* was significant due to the meaningful difference between a false arrest and malicious prosecution claim. Regardless of why a person is arrested, they will be detained and treated largely the same way until their arraignment. In contrast, extra charges post-arraignment impose a substantial burden on the defendant, including altering trial preparations, plea negotiations, the emotional and reputational impact on the defendant, bail amount, and pre-trial detention time. *Johnson*, 477 F.3d at 83 (citing *Posr v. Doherty*, 944 F.2d 91, 93 (2d Cir. 1991)). Hence, the different

policies underlying malicious prosecution and false arrest claims compel courts to analyze each charge against a defendant when addressing a malicious prosecution claim, and such a general rule is consistent with the holding in *Wright* due to the idiosyncratic facts present within it. *Id.* at 84-85.

In 2009, the Third Circuit, in an *en banc* opinion, did state that *Johnson* and *Wright* were in "considerable tension." *Kossler v. Crisanti*, 564 F.3d 181, 193 (3d Cir. 2009). Before making this comment, however, it repeatedly and explicitly noted that *Johnson* and *Wright* were not properly before the court, rendering this statement dicta. *Id.* at 192 (describing *Johnson* as "a case that on its face has no applicability to the one at hand"); *id.* at 193 ("*Johnson* involved an entirely different analysis than the one at issue here. . . . The favorable termination element and the probable cause element are distinct requirements."); *id.* at 194 ("*Johnson* and *Wright* are not directly applicable to the instant case. . . . [W]e do not rely on the approach taken in either *Johnson* or *Wright*."). Plus, while pointing out tension between the two holdings, the *Kossler* court resolved it by stating that "*Wright* and *Johnson* both illustrate that the analysis of malicious prosecution claims involving multiple charges is a fact-intensive one." *Id.* at 194.

Thus, even if there may be some precarious circumstances, such as the unique facts of *Wright*, where the court dismisses all malicious prosecution and false arrest

claims together for the same reason, the Third Circuit has succinctly established the general rule as follows:

> In light of . . . malicious prosecution claim[s] . . . we will assess whether any reasonable jury could find a lack of probable cause as to any of the five crimes charged against him, bearing in mind that although false arrest or imprisonment claims will necessarily fail if probable cause existed for any one of the crimes charged against the arrestee, "probable cause on one charge does not foreclose a *malicious prosecution* cause of action" based on additional charges for which there was no probable cause. In the case of prosecution, unlike arrest, unfounded charges almost surely will place an additional burden on the defendant, and thus we must consider probable cause as to each of the charges.

*Dempsey v. Bucknell Univ.*, 834 F.3d 457, 477 (3d Cir. 2016) (internal citations omitted) (quoting *Johnson*, 477 F.3d at 83-84) (emphasis in *Dempsey*).

Defendant Pierce disputes this legal position on multiple grounds, all of which are inconsistent with the law.  First, Defendant Pierce claims that he is entitled to qualified immunity on Plaintiff's claims because it was ambiguous at the time of the his conduct whether *Wright* or *Johnson* is good law.  The court disagrees.  An issue being complex is not the same as it being ambiguous.  It is clear, under Third Circuit law, that an investigator cannot aid a prosecutor in charging a defendant with multiple crimes without any probable cause when they have actual knowledge of this lack of probable cause, even if the defendant was arrested for another reasonably suspicious crime.  While a web of confusing and entangled facts may show that the

prosecutor or investigator's position on the charges was *reasonable*, satisfying
probable cause *at the time of arrest*, the law has never opened the door for the
government to charge someone with a laundry list of crimes simply because they
have probable cause for one crime. Otherwise, the government could hold murder,
terrorism, and assault charges over a man who was simply arrested for a DUI—an
absurd outcome with flagrant disregard for a defendant's due process rights. *See
Johnson*, 477 F.3d at 83 (citing *Posr*, 944 F.2d at 93).

Second, Defendant Pierce suggests that *Wright* controls here because Plaintiff
effectively admits in his Amended Complaint that he was a felon in possession of a
firearm. The court will not address this argument at this time because it violates
Rule 12(g)(2)'s consolidation rule[1] and because it asks the court to inappropriately
resolve a fact-intensive question at the 12(b)(6) stage. *See Hill v. Borough of
Kutztown*, 455 F.3d 225, 232 n.7 (3d Cir. 2006). The court nonetheless does agree
with Defendant Pierce that Plaintiff's position on whether he was actually a felon in
possession of a firearm or not is unclear, with his amended complaint and his brief
appearing to contradict one another. Plaintiff is therefore instructed to amend his
complaint for the limited purpose of giving further clarification on this issue, as it

---

[1]     Indeed, one of the key factual issues Defendant Pierce relies on here is that Plaintiff refers,
in his amended complaint, to a gun as "Plaintiff's gun," yet Plaintiff made this same reference in
his original complaint. (Doc. 1, ¶ 73 ("Defendant Pierce knew that shell casings were found in the
hallway outside Unit B-3 and that they did not belong to Plaintiff's gun."); Doc. 36, ¶ 77 (same).)

could influence how Defendant Pierce prepares for summary judgment or trial. Third, Defendant Pierce argues that the court should reject *Johnson* because it inappropriately attempts to overturn an earlier panel opinion, while only an *en banc* or Supreme Court decision could do so.  As shown above, however, *Wright* and *Johnson* are both good law, and the tension between the two is merely specious.

## IV.   <u>CONCLUSION</u>

For the reasons outlined above, the court will grant Defendant Sprow's motion, dismissing all claims against him and Dauphin County with prejudice.  The court will also dismiss all claims against the City of Harrisburg with prejudice.  The court will deny Defendant Pierce's motion and grant Plaintiff twenty-one days leave solely to clarify the firearm issue.  An appropriate order will follow.

*/s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: January 20, 2021