IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **JORGE RIVERA-GUADALUPE,** | : | **Civil No. 1:19-CV-1400** |
| | : | |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **JACOB PIERCE,** | : | |
| | : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

**M E M O R A N D U M**

Before the court is Defendant Jacob Pierce's motion for judgment on the pleadings. (Doc. 73.) For the reasons set forth below, the motion will be denied.

## I.   BACKGROUND

This dispute stems from Plaintiff Jorge Rivera-Guadalupe's criminal prosecution relating to a May 2017 shooting at his residence in Harrisburg, Pennsylvania, as investigated by Defendant Detective Jacob Pierce. (Doc. 60-1 ¶¶ 5, 6, 23, 48, 78.) The following factual account accepts the allegations of the Second Amended Complaint (Doc. 60-1) (hereinafter "operative complaint") as true and draws all reasonable inferences in Rivera-Guadalupe's favor.

On May 22, 2017, Christopher Valkosak, a close friend of Rivera-Guadalupe, spent the day with him at his boarding house to offer him protection because he had been physically assaulted the previous day. (*Id.* ¶¶ 9, 11–12.) Sometime after 11:00 p.m., Valkosak was standing in the doorway to Rivera-Guadalupe's room and facing

the common-space hallway when two men appeared in front of him. (*Id.* ¶¶ 15, 17.) One of them, a dark-skinned male in a black hoodie, shot Valkosak in the abdomen, and both subsequently fled. (*Id.* ¶ 17.) Valkosak was critically injured and eventually taken to the hospital. (*See id.* ¶¶ 20, 35.)

Detective Pierce led the shooting investigation. (*Id.* ¶ 73.) In an interview at the hospital, Valkosak told Pierce that after he was shot, he saw Rivera-Guadalupe remove a gun from under the mattress and flee. (*Id.* ¶ 35.) Valkosak also confided in Pierce that he had smoked K-2, a psychoactive drug, two hours before the shooting. (*Id.* ¶¶ 36–37.)

On May 23, 2017, Pierce procured a search warrant for Rivera-Guadalupe's room, where officers discovered marijuana, among other things. (*Id.* ¶¶ 31–34.) On May 26, 2017, Pierce applied for an arrest warrant, in a criminal complaint containing an affidavit of probable cause. (*Id.* ¶¶ 78, 81; Doc. 79-1.) Rivera-Guadalupe was arrested that day pursuant to the warrant and was detained until his trial in December 2018. (Doc. 60-1 ¶¶ 77, 84; Doc. 79-1 at 7.)

At the preliminary hearing on June 8, 2017, the Commonwealth introduced testimony from three witnesses: Valkosak, Pierce, and Stanley Scales, Valkosak's roommate. (*See* Doc. 77-3 at 2.) Pierce included in his testimony that, despite having visited Valkosak several times in the hospital, he never took a recorded statement because Valkosak was "very highly medicated." (*Id.* at 62:12–17.).

2

On August 4, 2017, the Commonwealth filed nine charges against Rivera-Guadalupe: (1) attempted homicide; (2) unlawful possession of a firearm; (3) possession of an unlicensed firearm; (4) conspiracy to commit aggravated assault; (5) robbery; (6) recklessly endangering another person; (7) possession of marijuana; (8) conspiracy to commit homicide; and (9) conspiracy to commit aggravated assault.[1] (Doc. 60-1 ¶ 48.) Judge Richard A. Lewis of the Dauphin County Court of Common Pleas presided over the two-day trial in December 2018. "At the outset of the trial," the Commonwealth dropped five charges, and the following four remained: possession of a firearm; possession of a firearm without a license; robbery; and theft by unlawful taking. (*Id.* ¶ 50.) On December 12, 2018, the jury found Rivera-Guadalupe not guilty on all four counts. (*Id.* ¶ 51.)

In August 2019, Rivera-Guadalupe initiated this action by filing a complaint against various defendants, including Pierce. (Doc. 1.) In July 2020, upon motion by the defendants, the court dismissed the complaint in part for failure to state a claim. (Docs. 11, 12, 30, 31.) After Rivera-Guadalupe filed an amended complaint, Pierce filed a motion to dismiss based on qualified immunity, and the court denied the motion on procedural grounds. (Docs. 36, 38, 43, 58–59.) Pierce appealed, and the Third Circuit remanded for the court to clarify the record by ruling on the qualified

---

[1] The court notes that the operative complaint lists twice the "conspiracy to commit aggravated assault" charge and appears to have omitted the "theft by unlawful taking" charge on which Rivera-Guadalupe was eventually tried.

immunity issue on its merits once raised in an appropriate procedural posture. (Docs. 63, 69.) In the meantime, Rivera-Guadalupe filed the operative complaint which advances three claims against Pierce: (1) a § 1983 malicious prosecution claim under the Fourth Amendment; (2) a state common law malicious prosecution claim, and (3) punitive damages. (*See* Doc. 60-1.) Upon remand, and in accordance with instructions by this court, Pierce filed the present motion for judgment on the pleadings, renewing his argument that he is entitled to qualified immunity. (Docs. 72, 73.) The motion has been fully briefed and is ripe for review.

## II.  **STANDARD OF REVIEW**

Under Federal Rule of Civil Procedure 12(c), once the pleadings are closed, but within such time as to not delay trial, a party may move for judgment on the pleadings. The standard of review is identical to that of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), except that the court reviews not only the complaint, but also the answer and written instruments attached to the pleadings. *Turbe v. Gov't of Virgin Islands*, 938 F.2d 427, 428 (3d Cir. 1991); *Lum v. Bank of Am.*, 361 F.3d 217, 223 (3d Cir. 2004); *Iseley v. Talaber*, No. 5-CV-444, 2008 WL 906508, at *2 (M.D. Pa. Mar. 31, 2008) (citing 2 James Wm. Moore et al., *Moore's Federal Practice—Civil* § 12.38). If matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Federal Rule of Civil Procedure 56. FED.

R. Civ. P. 12(d). The court should consider the allegations in the pleadings, the exhibits attached thereto, matters of public record, and "undisputedly authentic" documents not attached to the pleadings if Plaintiff's claims are based on such documents, and may do so without converting the motion to one for summary judgment. *See Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196–97 (3d Cir. 1993); *Mele v. Fed. Reserve Bank of N.Y.*, 359 F.3d 251, 256 n.5 (3d Cir. 2004). Because a Rule 12(c) "motion calls for an assessment of the merits of the case at an embryonic stage, the court must view the facts contained in the pleadings in the light most favorable to the nonmovant and draw all reasonable inferences therefrom" in the nonmonvant's favor. *R.G. Fin. Corp. v. Vergara-Nunez*, 446 F.3d 178, 182 (1st Cir. 2006). Judgment on the pleadings is appropriate only when the moving party "clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Minn. Lawyers Mut. Ins. Co. v. Ahrens*, 432 F. App'x 143, 147 (3d Cir. 2011).

## III.   **DISCUSSION**

A claim under 42 U.S.C. § 1983 requires the plaintiff to demonstrate that (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct violated a right, privilege, or immunity secured by the Constitution or laws of the United States. *Harvey v. Plains Twp. Police Dep't*, 421 F.3d 185, 189 (3d Cir. 2005) (quoting *West v. Atkins*, 487 U.S. 42, 48 (1988)).

Qualified immunity protects government officials from individual liability for such claims unless the plaintiff demonstrates "(1) the violation of a constitutional right, and (2) [that] the law was clearly established at the time of the violation." *Jefferson v. Lias*, 21 F.4th 74, 80 (3d Cir. 2021) (internal citation omitted). Contrary to Pierce's contention, he is not entitled to qualified immunity because the operative complaint adequately alleges a constitutional violation of a clearly established right.[2]

## A. Rivera-Guadalupe adequately alleges a Fourth Amendment malicious prosecution claim.

To state a claim for malicious prosecution under the Fourth Amendment, a plaintiff must allege that: (1) the defendant initiated a criminal proceeding; (2) the criminal proceeding ended in his favor; (3) the defendant initiated the proceeding without probable cause; (4) the defendant acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding. *Johnson v. Knorr*, 477 F.3d 75, 81–82 (3d Cir. 2007). Pierce's motion argues that the operative complaint fails on the first and third prongs.

---

[2] Pierce does not argue, nor does the court discern, any separate basis for dismissing Rivera-Guadalupe's state law malicious prosecution claim or punitive damages claim. *See Corrigan v. Central Tax Bureau of Pa., Inc.*, 828 A.2d 502, 505 (Pa. Cmwlth. 2003) (requiring all of the same substantive elements as a Fourth Amendment malicious prosecution claim, except that the state claim does not require a plaintiff to prove the final "deprivation of liberty" element); 42 U.S.C. §§ 1983, 1988; 42 PA. STAT. AND CONS. STAT. ANN. § 8550. For purposes of this motion, these claims rise and fall with Rivera-Guadalupe's § 1983 claim.

**1. Rivera-Guadalupe adequately alleges that Pierce initiated the criminal proceeding.**

While, as a general rule, it is prosecutors rather than police officers who are responsible for initiating a criminal proceeding, the Third Circuit has found that a police officer initiates a proceeding where he arrests a suspect without a warrant, and then submits an affidavit of probable cause to the magistrate judge, as part of a criminal complaint, charging the defendant with crimes. *See Harvard v. Cesnalis*, 973 F.3d 190, 203 (3d Cir. 2020) (citing Pennsylvania Rule of Criminal Procedure 502, which states that a criminal proceeding is instituted by the filing of a written complaint or by a warrantless arrest under enumerated circumstances). Here, the operative complaint adequately alleges that Pierce initiated the criminal proceeding by filing a criminal complaint against Rivera-Guadalupe, complete with an affidavit of probable cause and application for an arrest warrant, and in fact arresting him. (Doc. 60-1 ¶¶ 39, 58, 81; Doc. 79-1.)

Moreover, Rivera-Guadalupe has satisfied this element, even to the extent that he is required to show that Pierce "furnished false information to, or concealed material information from, prosecuting authorities." *Gallo v. City of Phila.*, 161 F.3d 217, 220 n.2 (3d Cir. 1998), as amended (Dec. 7, 1998); *Halsey v. Pfeiffer*, 750 F.3d 273, 297 (3d Cir. 2014) (officers who engage in such conduct may be held liable for their influence on and participation in the decision to institute criminal proceedings). The operative complaint avers that Pierce knew and ignored exculpatory evidence

against Rivera-Guadalupe but nevertheless arrested and charged him. (Doc. 60-1 ¶¶ 39, 58, 81.) Additionally, Pierce's affidavit of probable cause for the arrest warrant, as supplied by Pierce, further supports and expands Rivera-Guadalupe's contention.[3] (Doc. 79-1 at 7–8.) Drawing all reasonable inferences in Rivera-Guadalupe's favor, the operative complaint adequately alleges that Pierce's affidavit recklessly misrepresented the facts known to him, *see infra*, which is sufficient to show that Pierce initiated criminal proceedings against Rivera-Guadalupe.

### 2. Rivera-Guadalupe adequately alleges a lack of probable cause.

Where an arrest is made pursuant to a warrant, a lack of probable cause can be established where "the officer, with at least a reckless disregard for the truth, made false statements or omissions that create[d] a falsehood in applying for a warrant" if "those assertions or omissions were material, or necessary, to the finding of probable cause." *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 468–69 (3d Cir. 2016) (citing *Wilson v. Russo*, 212 F.3d 781, 786 (3d Cir. 2000) (quotation marks

---

[3] The court may consider the attached criminal complaint without converting the motion to one for summary judgment because it is a public record and is integral to the operative complaint. *See McTernan v. City of York, Penn.*, 577 F.3d 521 (3d Cir. 2009) (citing *Lum*, 361 F.3d at 222 n.3); *see also Shelley v. Wilson*, 339 F. App'x 136, 137 (3d Cir. 2009) (affirming the district court's consideration of motion exhibits including a criminal complaint and affidavit of probable cause in support of an arrest warrant and a state court docket). The court will also consider all other public records provided by the parties. (Docs. 73-1 (criminal docket), 77-1, 77-2 (criminal trial transcripts), 77-3 (preliminary hearing transcript).) *See Sands v. McCormick*, 502 F.3d 263 (3d Cir. 2007) (affirming the district court's consideration of a preliminary hearing transcript as a public record in ruling on a motion to dismiss).

omitted)); *Andrews v. Sculli*, 853 F.3d 690, 697 (3d Cir. 2017). The Third Circuit has outlined the proper analysis: "First, we assess the evidence the plaintiff asserts was recklessly omitted from the affidavit. Next, we reconstruct an affidavit that includes any recklessly omitted information. And finally, we assess the materiality of the omitted information to the probable cause determination." *Dempsey*, 834 F.3d at 470. An omission is reckless if the affiant "withholds a fact in his ken that '[a]ny reasonable person would have known . . . was the kind of thing the judge would wish to know.'" *Id.* (quoting *Wilson*, 212 F.3d at 788) (citation omitted).

Here, drawing all reasonable inferences in Rivera-Guadalupe's favor, the operative complaint adequately alleges that Pierce recklessly omitted facts from the affidavit. As Rivera-Guadalupe points out, Pierce's affidavit in support of the arrest warrant and criminal complaint failed to specify that it was Scales, who was neither at the shooting nor knew the shooter, who allegedly spotted Rivera-Guadalupe with the shooter. Without explanation or equivocation, Pierce's affidavit equated the "unidentified male" shooter with "the unidentified male" whom Scales observed with Rivera-Guadalupe shortly after the shooting. (Doc. 79-3 at 7–8.) From this, it can be reasonably inferred that Pierce overstated the certainty of the identification and thereby misrepresented the significance of the observation.[4] A reasonable person

---

[4] The pleadings do not illuminate any other facts within Pierce's knowledge from which he could have reasonably concluded that the two men were the same. The court cannot accept, for the truth of the matter, Scales's testimony about the man's general physical description or infer that Pierce

would have known that a judge would wish to know, as Pierce did, that the person who allegedly observed Rivera-Guadalupe with the shooter lacked a foundation for that identification. *See Andrews*, 853 F.3d at 705 n.17 (finding an affidavit to be misleading where the officer overstated the confidence of the victim's positive identification).

Moreover, the criminal complaint supports Rivera-Guadalupe's contention that Pierce recklessly omitted various facts which cast substantial doubt on Valkosak's reliability. In the affidavit of probable cause, Pierce failed to mention that Valkosak had relayed his observations while heavily medicated in the intensive care unit. He also failed to mention that Valkosak had admitted to Pierce that, at the time of his alleged observation, he was under the influence of a drug with psychoactive properties. Even further, a reasonable inference can be drawn that Pierce misrepresented the sources of his information in the affidavit of probable cause by stating at the outset that he learned the presented information from "witnesses," when the key allegations of Rivera-Guadalupe's conduct were supplied to Pierce solely by Valkosak.[5]

---

knew at the time that Scales's description substantively matched several witnesses' description of the shooter. (*See* Doc. 77-3 at 44:5–48:16 (Scales testified at the preliminary hearing that he saw Rivera-Guadalupe with a young, clean-shaven African-American fellow in dark-colored clothing); Doc. 60-1 ¶¶ 17, 18, 27 (Valkosak and another witness similarly described the shooter as an African American male in dark clothes).)

[5] In Pierce's answer to the complaint, he admitted that he relied on Valkosak's statement that Rivera-Guadalupe "took a gun from under the mattress and fled." (Doc. 65 ¶¶ 38, 41.)

A reasonable person would be aware that a judge would want to know these details, as Valkosak's compromised state during the interview and at the time of his initial observations meaningfully impact his credibility and potentially undermine the believability of his story.[6] Observations made under the influence of psychoactive drugs are less reliable as a matter of course, as are stories relayed by a heavily medicated patient in the immediate aftermath of suffering a gunshot injury. It was therefore reckless for Pierce not to disclose Valkosak's state of mind at the scene of the crime or during the hospital bedside interview, as was it reckless to imply that Valkosak was not the sole witness to supply information to support the complaint's key allegations. *See Dempsey*, 834 F.3d at 470 (noting that the complex circumstances which impact officers' credibility determinations "underscore how important it is, where exigencies do not require an immediate arrest, that officers undertake a careful investigation before making the serious decision to file a criminal complaint and that they include in the affidavit all information 'any reasonable

---

Furthermore, the fact that the Commonwealth did not introduce any other witnesses to testify at trial that Rivera-Guadalupe possessed a gun or stole money further supports that Valkosak was the only witness who relayed Rivera-Guadalupe's alleged conduct to Pierce. (See generally Doc. 77-1 and 77-2.)

[6] Indeed, the record indicates that Pierce was, in fact, cognizant of Valkosak's diminished state, as he later testified that he was concerned that Valkosak could not provide a reliable statement in his medical condition. (Doc. 77-2 at 168:13–24 (trial); Doc. 77-3 at 62:10–21 (preliminary hearing).) Pierce's testimony can be considered for its truth because an admission by a party-opponent is excluded from the definition of hearsay. *See* Fed. R. Evid. 801(d)(2)(A).

person would know that a judge would want to know' in making a probable cause

determination") (internal citation omitted).

Having determined that these omissions were reckless, the court next

reconstructs the affidavit of probable cause to cure the omissions. *See Dempsey*, 834

F.3d at 470 (requiring courts to perform a word-by-word reconstruction of an

affidavit that contains reckless or intentional misrepresentations). The reconstructed

affidavit follows, and the amendments are bracketed and bold:

> On 5/22/2017 about 2335 hours Dauphin County Dispatch received a call about a shooting which took place at PLAINTIFF'S ADDRESS[7] in the City of Harrisburg. Patrol Officers were directed to apartment B-3 where the victim, VALKOSAK, was located on the floor.
>
> It was discovered that VALKOSAK received a single gun shot to the stomach area of his person. VALKOSAK was transported to Hershey Medical Center as a trauma and received Emergency Surgery and remained in intensive care. I responded to the scene for the investigation and secured a search warrant for the apartment where VALKOSAK was located. Several items were seized to include information verifying that Jorge Rivera-Guadalupe was the renter of the apartment/room and a small amount of marijuana.
>
> Through the investigation it was learned from witnesses that Jorge was in some type of a fight days prior and sustained minor injuries to his person to include a black eye. Jorge, also had knowledge that VALKOSAK had recently received some form of Worker Compensation Settlement which only Jorge and his roommate knew about.
>
> Jorge invited VALKOSAK over to his place of residence for protection and to get even with the individuals who fought with him previously.

---

[7] Rivera-Guadalupe's address and Valkosak's name were redacted from the filed document. (Doc. 79-1 at 7–8.) To clarify which information the court has unredacted, the name or an explanatory placeholder has been inserted in all capital letters.

An unidentified male arrived and fought with VALKOSAK briefly and eventually fired two gun shots, however, only one struck VALKOSAK which was in his stomach area.

After VALKOSAK was shot the unidentified male fled the scene on foot. **[Valkosak informed me of the following:]** During the altercation Jorge was also in possession of a firearm, however, he did not attempt to protect VALKOSAK and once he was laying on the ground he went through his pockets taking approximately $400 in U.S. currency and vehicle keys and then he fled the scene**. [Valkosak admitted to me that, at the time of this observation, he was under the influence of K-2, a drug with psychoactive properties. Valkosak related his account to me while he was in the intensive care unit and heavily medicated. I did not take a formal statement from Valkosak because I was concerned that Valkosak could not provide a reliable statement given his medical condition.]**

It should be noted that Jorge is not licensed to carry a firearm and he has previously been convicted of enumerated offenses.

~~**The unidentified male and Jorge were observed together**~~ **[Stanley Scales, Valkosak's roommate who was not present for the shooting, observed Jorge with an unidentified male]** in another area several minutes after the shooting. With the information provided Jorge is being charged with numerous charges stemming from this incident. It should be noted that the investigation is still ongoing.

(*See* Doc. 79-1 at 7–8.)

The final inquiry is whether, in the context of the reconstructed affidavit, the

omissions were "material, or necessary, to the finding of probable cause" *Dempsey*,

834 F.3d at 477 (quoting *Wilson*, 212 F.3d at 787). Probable cause "exists whenever

reasonably trustworthy information or circumstances within a police officer's

knowledge are sufficient to warrant a person of reasonable caution to conclude that

an offense has been committed by the person being arrested." *Andrews*, 853 F.3d at

701 n.13 (3d Cir. 2017) (internal citation omitted). Stated differently, there must be "a 'fair probability' that the person committed the crime at issue." *Wilson*, 212 F.3d at 789 (internal citation omitted).

The Third Circuit has held generally that a victim's statement alone may establish probable cause "in the absence of independent exculpatory evidence or substantial evidence of [a] witness's own unreliability that outweighs the probable cause that otherwise exists." *Dempsey*, 834 F.3d at 477–78 (quoting *Wilson*, 212 F.3d at 790) (brackets and internal quotation marks omitted). However, the standard does not "require that officers correctly resolve conflicting evidence or that their determinations of credibility, were, in retrospect, accurate," *see Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005), and "some 'unreliability or exculpatory evidence' will not 'fatally undermine[ ]' probable cause otherwise established." *Dempsey,* 834 F.3d at 478 (quoting *Wilson*, 212 F.3d at 790). The probable cause inquiry is fact intensive and generally one for the jury. *Id.* at 468; *Halsey*, 750 F.3d at 300 (cautioning courts from granting a defendant "summary judgment in a malicious prosecution case when there is a question of whether there was probable cause for the initiation of the criminal proceeding"). To determine that probable cause exists as a matter of law, the court must conclude that no reasonable jury could find that the affidavit lacked probable cause. *Dempsey,* 834 F.3d at 477.

Here, a jury could reasonably find a lack of probable cause for the two firearm charges.[8] The only support for Rivera-Guadalupe's possession of a gun in the affidavit are Valkosak's statements that Rivera-Guadalupe invited him over to fight for him and possessed a firearm during the altercation, and Rivera-Guadalupe's prior criminal conviction prohibiting him from possessing a gun. Pierce admitted that they never recovered a gun and that he relied on Valkosak's statement that Rivera-Guadalupe "took a gun from under the mattress and fled." (Doc. 60-1 ¶¶ 38, 41; Doc. 65 ¶¶ 38, 41.) Because of the risk that Valkosak's drug use and medication compromised his recall—and considering the absence of any other facts to support Rivera-Guadalupe's possession of a firearm—a jury could reasonably find that the reconstructed affidavit does not establish probable cause for these offenses. [9] *See Dempsey*, 834 F.3d at 477–78; *see also Andrews*, 853 F.3d at 704 (holding that a witness's statement containing internal discrepancies, standing alone, did not establish probable cause as a matter of law); *see also Vassallo v. Fox*, No. 4-CV-

---

[8] The two firearm charges require a showing that the defendant possessed or controlled (unlawful possession of a firearm) or carried (unlicensed firearm) a firearm. *See* 18 PA. STAT. AND CONS. STAT. § 6105 ("A person who has been convicted of an offense enumerated in subsection (b) . . . shall not possess, use, control, sell, transfer or manufacture . . . a firearm in this Commonwealth."); *id.* § 6106 ("[A]ny person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.").

[9] Moreover, it may ultimately be shown that Pierce knew Rivera-Guadalupe did not ask Valkosak to stay with him and that Valkosak instead volunteered his presence, as suggested by Valkosak's preliminary hearing testimony. (Doc. 77-3 at 20:11–21:5.)

697, 2004 WL 2827517, at *6 (E.D. Pa. Dec. 9, 2004) (a fact issue precluded summary judgment where the only affidavit statement identifying the plaintiff as the perpetrator came from a witness about whom the officer was aware of, but failed to disclose, various details undermining the witness's reliability); *Brookins v. Cuiffi*, No. 11-CV-784, 2012 WL 1247154, at *7 (W.D. Pa. Mar. 19, 2012), *report and recommendation adopted in relevant part*, No. 11-CV-784, 2012 WL 1252796 (W.D. Pa. Apr. 13, 2012) (holding that the officer's knowledge of circumstances tainting first witness's credibility and the officer's suspicion that the only other witness was coached could cause a reasonable jury to find a lack of probable cause).

For similar reasons, a reasonable jury could also find a lack of probable cause for the robbery charge, which is supported by the following affidavit facts:[10] (1) Rivera-Guadalupe knew about Valkosak's cashed check; (2) he invited Valkosak to his home; and (3) Valkosak stated that after he was shot, Rivera-Guadalupe stole his cash. In the context of Valkosak's and Rivera Guadalupe's intimate friendship, as alluded to in the affidavit's statement about Valkosak's protective conduct, the first two facts appear to be innocent facts that, even taken in the totality of the circumstances, are insufficient for probable cause. *Cf. United States v. Cochran*, 806

---

[10] Under Pennsylvania law, a person commits this specific robbery offense when "in the course of committing a theft, he . . . physically takes or removes property from the person of another by force however slight." 18 PA. STAT. AND CONS. STAT. § 3701.

F. Supp. 560, 563 (E.D. Pa. 1992) ("[A] set of otherwise innocent facts can, in combination" give rise to probable cause). Thus, as with the firearm charges, Valkosak's statement about Rivera-Guadalupe's conduct is material to the probable cause determination, and a jury could reasonably find that the reconstructed affidavit does not establish probable cause that Rivera-Guadalupe robbed Valkosak.

Finally, a jury could reasonably find a lack of probable cause for the charges relating to Valkosak's injury: attempted homicide, conspiracy to commit homicide, conspiracy to commit aggravated assault, and conspiracy to recklessly endanger another person.[11] To show probable cause for these offenses, the affidavit would need to establish a fair probability that Rivera-Guadalupe solicited the shooter to commit the offense, agreed that the shooter would engage in the unlawful conduct of the offense, or agreed to aid the shooter in planning or committing the offense.[12] *See* 18 PA. STAT. AND CONS. STAT. §§ 306, 903. The affidavit's only support for

---

[11] Pierce's affidavit of probable cause does not allege or imply that Rivera-Guadalupe shot Valkosak or otherwise acted to cause his injury. As such, Rivera-Guadalupe's liability for attempted homicide could only be premised on his complicity. Under Pennsylvania law, a person is liable as an accomplice for another person's conduct when "with the intent of promoting or facilitating the commission of an offense," he "(i) solicits such other person to commit it; or (ii) aids or agrees or attempts to aid such other person in planning or committing it." *See* 18 PA. STAT. AND CONS. STAT. § 306(b)(3), (c); *see also Commonwealth v. Romero*, 722 A.2d 1014, 1020 (1999); *Commonwealth v. Thompson*, 674 A.2d 217, 222–23 (1996).

[12] To be guilty of a conspiracy charge, a person must intend to promote or facilitate the underlying offense, and either "(1) agree[] with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or (2) agree[] to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime." 18 PA. STAT. AND CONS. STAT. § 903.

coordination between Rivera-Guadalupe and the shooter are that (1) the attack occurred after Rivera-Guadalupe invited Valkosak to his home; (2) Valkosak stated that Rivera-Guadalupe possessed a gun during the attack but fled instead of defending him; (3) and Scales observed Rivera-Guadalupe with an unidentified male shortly after the shooting. The first and third facts are purely circumstantial and only minimally suggestive of any coordination, so here too the probable cause determination relies in large part on Valkosak's impeached statement. Under the totality of the circumstances, the reconstructed affidavit falls far short of establishing probable cause for these charges as a matter of law.

Because a reasonable jury could find that the amendments to the affidavit dissolve probable cause for the above charges, Rivera-Guadalupe plausibly alleges that Pierce instituted criminal proceedings against him without probable cause for all but one of the charges against him.[13]

### 3. Rivera-Guadalupe's malicious prosecution claim is not defeated by a finding of probable cause for one charge.

Pierce contends that he is nevertheless entitled to judgment on his malicious prosecution claim because probable cause existed for at least one of the charges. (*See* Doc. 79 at 9). Pierce relies on *Wright v. City of Philadelphia*, 409 F.3d 595, 602 (3d

---

[13] The only charge for which probable cause exists as a matter of law is possession of marijuana, given that marijuana was found in Rivera-Guadalupe's room. *See* 35 Pa. Stat. § 780-113(a)(31)(i) (criminalizing possession of even small amounts of marijuana for personal use).

Cir. 2005), in which the Third Circuit held that the plaintiff's malicious prosecution claim failed because probable cause existed for at least one of the charges, as already determined in the false arrest context. However, the Third Circuit has also subsequently applied a seemingly contradictory rule it later established in *Johnson v. Knorr*, 477 F.3d 75, 83 (3d Cir. 2007) that "'[p]robable cause on one charge does not foreclose a *malicious prosecution* cause of action' based on additional charges for which there was no probable cause." *Dempsey*, 834 F.3d at 477 (quoting *Johnson*, 477 F.3d at 83); *Harvard*, 973 F.3d at 199 n.3 (applying *Johnson*); *see also Kossler v. Crisanti*, 564 F.3d 181, 194 (3d Cir. 2009), *abrogated on other grounds by Thompson v. Clark*, 142 S. Ct. 1332 (2022) (noting that the holdings in *Johnson* and *Wright* are difficult to reconcile).

The *Johnson* court, while not discounting *Wright*'s precedential status, did not "understand *Wright* to establish legal precedent of such broad application that it would 'insulate' law enforcement officers from liability for malicious prosecution in all cases in which they had probable cause to arrest the plaintiff on any one charge." *Johnson*, 477 F.3d at 83 (citing *Posr v. Doherty*, 944 F.2d 91, 100 (2d Cir. 1991)). By factually distinguishing *Wright*, *Johnson* clarified that the *Wright* court's dismissal of a malicious prosecution claim on the identical basis for which it dismissed the false arrest claim was unique to the facts of the case. *Id.* at 84–85; *see also Eaton v. Figaski*, No. 21-3094, 2022 WL 17831444, at *2 (3d Cir. Dec. 21,

2022) (acknowledging "the narrow confines to which *Johnson* relegated *Wright*").
The *Johnson* court further reasoned that, "[i]n the case of prosecution, unlike arrest,
unfounded charges 'almost surely will place an additional burden on the defendant,'
and thus we must consider probable cause as to each of the charges." *Dempsey*, 834
F.3d at 477 (citing *Johnson*, 477 F.3d at 84). The Third Circuit acknowledged that
"analysis of malicious prosecution claims involving multiple charges," like the
probable cause inquiry itself, "is a fact-intensive one." *Kossler*, 564 F.3d at 194
(noting that courts analyzing such malicious prosecution claims must "wrestle with
the approaches set forth in *Johnson* and *Wright* to determine which provides the
more appropriate framework to apply to a given set of facts").

Thus, the court turns to the specific facts of *Wright* and *Johnson*. In its
previous decision, the court recounted these cases in some depth and will not repeat
its review here. (*See* Doc. 58 at 10–15.) In summary, Wright's malicious prosecution
claim stemmed from an incident in which she broke into a residence, in which she
had just been sexually assaulted, to reclaim her clothing; in addition to her own
belongings, she took some items to purportedly help her identify her perpetrators
and other moderately valuable items with no evidentiary value. *Wright*, 409 F.3d at
597. During a police interview, she admitted that she broke into the house and took
the property. *Id.* An officer prepared an affidavit of probable cause and, with an
assistant district attorney's approval, arrested Wright for criminal trespass, burglary,

and theft. *Id.* at 598. However, all charges against Wright were dismissed at the preliminary hearing, nearly two months after her arrest, when the homeowner failed to appear. *Id.* The Third Circuit held that, based in part on Wright's admissions, the officer-defendant had probable cause as a matter of law to arrest Wright for criminal trespass, which was fatal to her false arrest claim. *Id.* at 603. It later concluded—without citing authority or articulating a legal rule—that probable cause for that charge also "dispose[d] of her malicious prosecution claims with respect to all of the charges brought against her, including the burglary," without analyzing probable cause for the other charges. *Id.* at 604.

Two years later, in *Johnson*, the specific question on appeal was whether a finding of probable cause to arrest the plaintiff on one charge, without any finding of probable cause on other charges, defeats a malicious prosecution claim. *Johnson*, 477 F.3d at 78. The criminal prosecution underlying *Johnson* involved a physical altercation in a parole office waiting room between parolee Johnson and several parole officers. *Id.* at 78–79. Johnson's malicious prosecution action alleged that the defendant-officer provided false information to an investigating officer, who with the approval of an assistant district attorney, filed a criminal complaint charging Johnson with simple assault, aggravated assault, terroristic threats, and reckless endangerment. *Id.* at 79–81. Johnson was arrested and detained for two days before posting bail, and a state court judge dismissed Johnson's charges approximately one

month later, following the preliminary hearing. *Id.* at 79. In Johnson's malicious prosecution action, the district court found probable cause for the terroristic threats charge and relied on *Wright* to grant summary judgment to the defendant-officer. *Id.* at 81. The Third Circuit reversed and remanded, instructing the district court to decide whether probable cause existed for each charge. *Id.* at 85.

Confronted with the divergent facts of *Johnson* and *Wright*, the court is here compelled to apply the rule in *Johnson*. Pierce's allegedly reckless misrepresentations are substantively analogous to the *Johnson* defendant's intentional misrepresentations, and unlike the *Wright* defendant's affidavit of probable cause containing no alleged misrepresentations. Based in part on this very distinction, the *Johnson* court did not apply the rule implied from *Wright*'s holding. *Id.* at 84. Following this reasoning, the court will apply *Johnson* here.[14] *See Harvard*, 973 F.3d at 199 n.3 (applying the *Johnson* rule in a case involving an affiant-officer's reckless omission of facts material to probable cause); *Dempsey*, 834 F.3d at 477 (same).

Perhaps even more significantly, the facts in this case implicate *Johnson*'s concern that drawing a rule of general applicability from *Wright* would permit

---

[14] Pierce's argument that *Johnson* should not be applied to cases involving multiple charges that relate to a single incident would contravene *Harvard*. *See Harvard*, 973 F.3d at 197–98, 199 n.3 (applying the *Johnson* rule notwithstanding that all charges related to a single incident and were filed simultaneously).

officers to "tack on more serious, unfounded charges which would support a high bail or a lengthy detention, knowing that the probable cause on the lesser offense would insulate him from liability for malicious prosecution on the other offenses." *Id.* at 83 (quoting *Posr*, 944 F.2d at 100); *id.* at 81 (quoting the district court's acknowledgement that "ideological and philosophical absurdities . . . [could] accompany the application of [*Wright* to the facts of this case.]") (internal citation omitted). Here, the reconstructed affidavit only establishes probable cause as a matter of law for a misdemeanor marijuana offense, and Pierce's alleged misrepresentations permitted him to pile on many serious charges, including an attempted homicide offense, which alone exposed Rivera-Guadalupe to up to forty years of imprisonment. *See* 18 PA. CONS. STAT. § 1102(c).

Furthermore, given the vast differential between a single misdemeanor charge and multiple unfounded felony charges, it is reasonable to infer that the unsupported offenses imposed greater limitations on Rivera-Guadalupe's liberty, especially considering he was unable to post bail and spent more than a year and a half in prison. *See Blair v. City of Pittsburgh*, 711 F. App'x 98, 103 n.5 (3d Cir. 2017) (requiring plaintiffs to show that the unfounded charges "resulted in additional restrictions on his liberty beyond those attributable to the prosecution on the [ ] charges for which there was probable cause") (quoting *Johnson*, 477 F.3d at 86). The additional charges also unquestionably increased the burden of Rivera-

Guadalupe's trial defense, as the prosecution maintained all nine charges until "the outset of trial," as well as multiple of the charges through to verdict. (Doc. 60-1 ¶ 50.) *See Johnson*, 477 F.3d at 85; *contra Wright*, 409 F.3d at 598 (charges dismissed for failure to prosecute within two months of the plaintiff's arrest).

In conclusion, Rivera-Guadalupe's allegations present material issues of fact as to whether Pierce violated his Fourth Amendment right to be free from malicious prosecution by recklessly omitting material facts from the affidavit of probable cause, which caused Rivera-Guadalupe to be prosecuted for multiple charges that a reasonable jury could conclude were not supported by probable cause.

**B. Pierce's alleged conduct violates a clearly established right.**

Having determined that Rivera-Guadalupe has alleged a Fourth Amendment violation, the court turns to whether the right was clearly established at the time of the alleged violation. In doing so, the court must first "define the right allegedly violated at the appropriate level of specificity . . . in light of the specific context of the case." *Jefferson*, 21 F.4th at 81 (quoting *Peroza-Benitez v. Smith*, 994 F.3d 157, 165 (3d Cir. 2021)). Then, the court must examine existing case law to determine whether the "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). "Existing precedent is sufficient to place a constitutional question beyond debate and to defeat qualified immunity only if it is

controlling authority in the relevant jurisdiction, or if a robust consensus of cases of persuasive authority in the Court of Appeals has settled the question." *Sauers v. Borough of Nesquehoning*, 905 F.3d 711, 719 (3d Cir. 2018) (internal citations, quotation marks, and brackets omitted).

Based on the nature of Pierce's alleged conduct, the court need not belabor this question. Third Circuit precedent unequivocally demonstrates that an officer violates a clearly established right by submitting an affidavit of probable cause in which he recklessly disregards the truth. *See Lippay v. Christos*, 996 F.2d 1490, 1504 (3d Cir. 1993) ("If a police officer submits an affidavit containing statements he knows to be false or would know are false if he had not recklessly disregarded the truth, the officer obviously failed to observe a right that was clearly established. Thus, he is not entitled to qualified immunity.") (citing *Malley v. Briggs*, 475 U.S. 335, 345 (1986)); *see also Wilson*, 212 F.3d at 798 (Pollack, J., concurring in part) ("The right not to be arrested on the basis of a warrant obtained on the basis of a law enforcement officer's representations or omissions made in reckless disregard of the truth is a clearly established right.") (citing *Lippay*, 996 F.2d at 1504); *Karnes v. Skrutski*, 62 F.3d 485, 492 n.3 (3d Cir. 1995) ("*Lippay* provides an example of cases where proof of the Fourth Amendment violation necessarily proves a lack of reasonableness as to the existence of that violation."). Because Pierce's alleged

conduct violates a clearly established right, Pierce is not entitled to qualified immunity at this juncture.

## IV.   **CONCLUSION**

For the reasons explained above, Defendant Jacob Pierce's motion for judgment on the pleadings (Doc. 73) will be denied. An appropriate order shall follow.


*s/ Sylvia H. Rambo*
SYLVIA H. RAMBO
United States District Judge

Dated: March 27, 2023